NO. 07-08-0059-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

APRIL 14, 2008
______________________________

SMITH INTERNATIONAL, INC. AND/OR SMITH SERVICES
AND HARLEY TYLER, 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellants

V.

ISRAEL BUSTAMANTE,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 286th DISTRICT COURT OF COCHRAN COUNTY;

NO. 06-04-3964; HON. HAROLD PHELAN, PRESIDING
_______________________________

ON MOTION TO DISMISS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â _______________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ. 
Â Â Â Â Â Â Â Â Â Â Appellants, by and through their attorney, represent to the court that they no longer
wish to pursue this appeal and ask the Court to dismiss it. Appellee agrees to this motion. 
Without passing on the merits of the case, we grant the motion pursuant to Texas Rule of
Appellate Procedure 42.1(a)(2), vacate the trial courtâs judgment, and dismiss the case. 
Tex R. App. P. 43.2(e) (stating that an appellate court may vacate a trial courtâs judgment
and dismiss the case). Our having done so at the request of all the litigants, no motion for
rehearing will be entertained, and our mandate will issue forthwith.

Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice



 mere statement that a purported breach of an
applicable standard of care caused a particular outcome. Rather, information explaining
the link between the standard of care, its breach, and the ensuing injury must be contained
within its four corners. So, when addressing the topic of causation, an expert is required
to provide some factual information describing how and why the breach resulted in the
injury. And, while this explanation need not equate a marshaling of evidence, Rittmer v.
Garza, 65 S.W.3d 718, 723 (Tex. App.-Houston [1st Dist.] 2001, no pet.), it must be more
than conclusions. 

 Application of the Law

 The expert report at bar was provided by Dr. Howard I. Kurz. In it, he stated the
standards of care applicable in circumstances confronting Wells. So too did the expert
specify the manner in which Wells allegedly breached those standards. Yet, when it came
to connecting the purported defaults to the death of Lawrence, he opined:

 Mr. Ashmore would within a reasonable degree of medical certainty
survivedhad the above mentioned measures been performed upon arrival. 
However, it is still possible he would have survived had Dr. Wells responded
and taken appropriate measures when first paged by nursing staff.


 * * *



 It is my opinion that Dr. Wells breached the applicable standard of care in his
treatment of Mr. Ashmore . . . and these acts of or omissions proximately
caused Mr. Ashmore's death . . . . 


Missing from these opinions is information explaining the link between the alleged defaults
committed by Wells and Mr. Ashmore's death. Simply put, how or why they resulted in his
death went unmentioned. Similarly unmentioned by Kurz is the condition of which
Lawrence ultimately died. This is of import because elsewhere in his report the expert
uttered that 1) increased doses of levophed and dopamine were administered to Mr.
Ashmore "which lead to peripheral vasoconstriction and hypoperfusion as manifested my
[sic] mental confusion and kidney shutdown" and 2) administering "large doses of pressors
caus[ed] tissue hypoperfusion with kidney shutdown." Had the expert related that death
resulted from vasoconstriction, hypoperfusion, mental confusion, or kidney shutdown, then
it may be arguable that the report illustrated the requisite nexus between the purported
conduct of Wells and the death of his patient. But, without specifying whether Ashmore
died of heart failure, kidney failure, mental confusion, a combination of one or more of
those conditions or of something else, Kurz provided us with no factual data tying the
administration of those drugs to Lawrence's death. Simply put, without knowing what
Lawrence ultimately died of we are left to only guess at the relationship between supposed
bad acts on the part of the doctor and the death. 

 In sum, the allegations made by Kurz regarding causation were mere conclusions
because they did not explain how the purported defaults caused Lawrence's death; the
expert merely concluded that they did. See Nelson v. Ryburn, No. 07-05-0166-CV, 2006
Tex. App. Lexis 3081 at *7 (Tex. App.-Amarillo April 18, 2006, no pet.). So, the report fell
short of constituting a good faith effort to provide a fair summary between the alleged
misconduct of Wells and its relationship to Mr. Ashmore's death, and the trial court had no
discretion but to sustain Wells' objections. 

 Accordingly, we reverse the order of the trial court denying Wells' objections to the
report and remand the cause for further proceedings. (1)


 Brian Quinn 

 Chief Justice








 
1. Statute provides that if "an expert report has not been served within the period specified . . . because
elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order
to cure the deficiency." Tex. Civ. Prac. & Rem. Code Ann.§74.351(c) (Vernon Supp. 2006). Omitted from this
language is that found in its predecessor and requiring the claimant to have acted without intent or conscious
indifference before leave to amend could be granted. See Tex. Rev. Civ. Stat. Ann. 4590i, Â§13.01(g)
(repealed effective September 1, 2003) (stating that leave to amend could be granted if the default was not
intentional or the result of conscious indifference but rather the result of accident or mistake). Furthermore,
Ashmore solicited, here and below, leave to cure any deficiency found in the report tendered. Given the
request, we deem it appropriate to remand the cause so the trial court may decide whether to exercise the
discretion vested in it by Â§74.351(c).